UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**MEMORANDUM,
ORDER, & JUDGMENT**

| |
|---|
| GLADYS SOTOMAYOR, |
| Plaintiff, |
| - against – |
| CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION, FRED WALSH, and JEANETTE SMITH, |
| Defendants. |

10-CV-3411



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 2 4 2012 ★

BROOKLYN OFFICE

**Appearances:**

For the plaintiff:          Alan E. Wolin
                            Wolin & Wolin, Esqs.
                            420 Jericho Turnpike
                            Suite 215
                            Jericho, NY 11753

For the defendants:         Cindy E. Switzer
                            City of New York Law Department
                            100 Church Street
                            New York, NY 10007

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    Introduction ............................................................................................................... 3
II.   Facts ......................................................................................................................... 4
      A.    Parties .......................................................................................................... 4
      B.    Sotomayor's Initial Employment with the DOE .......................................... 5
      C.    Initial Tenure at the School of International Studies .................................... 6
      D.    2007-2008 School Year ............................................................................... 7
            1.    SLT Meeting ...................................................................................... 7
            2.    SAVE Room Incident ........................................................................ 8
            3.    Classroom Observations .................................................................... 9
            4.    Tentative Class Assignments for 2008-2009 School Year ............... 10
            5.    First FMLA Leave ............................................................................ 10
      E.    2008-2009 School Year ............................................................................. 10



1

|   | 1. | Change in Class Assignment | 10 |
|   | 2. | Classroom Observations | 11 |
|   | 3. | Concerns About Record Keeping | 14 |
|   | 4. | Unsatisfactory Rating | 15 |
|   | 5. | Second FMLA Leave | 15 |
| F. | | 2009-2010 School Year | 16 |
| G. | | 2010-2011 School Year | 16 |
|   | 1. | Class Assignment | 16 |
|   | 2. | Classroom Observations | 16 |
|   | 3. | Failure to Pay for Prep Period | 18 |
| H. | | 2011-2012 School Year | 18 |
|   | 1. | Initial Class Assignment | 18 |
|   | 2. | Plaintiff Initially Excessed | 19 |
|   | 3. | Plaintiff's Assignments for the 2011-2012 Year | 19 |
|   | 4. | Loss of "Per Session" Position | 20 |
| I. | | Current Employment | 21 |
| J. | | Evidence of Animus | 21 |
|   | 1. | School Composition | 21 |
|   | 2. | Differential Treatment of Plaintiff | 21 |
|   | 3. | Discriminatory Comments | 22 |
|   | 4. | Differential Treatment of Others | 23 |
| III. | | Procedural History | 25 |
| IV. | | Summary Judgment Standard | 25 |
| V. | | Claims Against City Are Dismissed | 26 |
| VI. | | Statute of Limitations for NYSHRL and NYCHRL Claims | 26 |
| A. | | One Year Statute of Limitations Applies to Claims Against the DOE | 26 |
| B. | | Time Bar Only Applies to NYSHRL Claims Against DOE | 28 |
|   | 1. | NYSHRL Discrimination Claims Against DOE Time Barred | 29 |
|   | 2. | NYCHRL Claims Against DOE Timely | 29 |
|   | 3. | NYSHRL Harassment Claim Against DOE Timely | 31 |
| VII. | | All Discrimination and Retaliation Claims Apply *McDonnell Douglas* Burden Shifting Framework | 31 |
| VIII. | | Federal Discrimination Claims Meritless | 33 |
| A. | | Requirements of a *Prima Facie* Case | 33 |
|   | 1. | Protected Class | 34 |
|   | 2. | Adverse Employment Action | 34 |
|   | 3. | Satisfactory Performance | 35 |
|   | 4. | Inference of Discrimination | 35 |
| B. | | No *Prima Facie* Case | 36 |
|   | 1. | Classroom Observations and Unsatisfactory Evaluations | 36 |
|   | 2. | Letters to File | 37 |
|   | 3. | Teaching Preferences | 37 |
|   | 4. | Teaching Load | 39 |
|   | 5. | Room Assignment | 39 |
|   | 6. | Excessing | 40 |
|   | 7. | "Per Session" Employment and Failure to Pay for Test Administration | 40 |

|  | 8. | Claims Dismissed | 41 |
| IX. | | State Discrimination Law | 41 |
| X. | | City Discrimination Law | 42 |
|  | A. | More Liberal Standard Applies | 42 |
|  | B. | Plaintiff Can Establish a *Prima Facie* Case Under City Law as to Observations, Evaluations, and Letters to File | 43 |
|  | C. | Legitimate, Non-Discriminatory Reasons | 45 |
|  | D. | No Evidence of Pretext | 45 |
| XI. | | Hostile Work Environment Claims Are Meritless | 48 |
|  | A. | Federal and State Law | 48 |
|  | B. | City Law | 49 |
|  | C. | Plaintiff Cannot Show Discrimination | 49 |
| XII. | | No *Prima Facie* Case of Retaliation Under Title VII, ADEA, NYSHRL, or NYCHRL | 50 |
| XIII. | | FMLA Retaliation Claim Fails | 52 |
| XIV. | | Conclusion | 52 |

I.  **Introduction**

This is one of a growing number of cases where teachers are subject to more frequent and intense classroom observation, checks, directions, and suggestions in an attempt to raise the quality of teaching. Whether the effect here was improvement of teaching quality—or, as plaintiff claims, unnecessary discriminatory and counterproductive stress on a devoted teacher— is not decided. The educational policy involved and its execution have not violated this teacher's rights under federal, New York state, or New York City law.

Beginning in the 2007-2008 school year, plaintiff Gladys Sotomayor, a New York City public school teacher, among other allegedly adverse actions, received increasingly frequent classroom observations, and was given negative performance evaluations and adverse letters in her file, by her supervisors, Principal Fred Walsh ("Walsh") and Assistant Principal Jeanette Smith ("Smith"). Defendants insist that Sotomayor was an underperforming teacher who needed this help, critique, and extra supervision. Sotomayor, a Hispanic-American woman over fifty, claims that these actions were the product of age, race, and national origin discrimination.

Plaintiff sues Walsh and Smith, as well as her employer, the New York City Department of Education ("DOE") and the City of New York ("City"), alleging discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq.*; Section 1983 of the Civil Rights Act of 1866 ("Section 1983"), 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.,* and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq. See* Compl. ¶¶ 42-118, Doc. Entry 1, July 26, 2010 ("Compl."). She also claims that defendants retaliated against her for exercising her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq. See* Compl. ¶¶ 119-123.

Defendants move for summary judgment on various grounds. Their motion is granted. The City is dismissed as an improper party. Sotomayor's claims under federal, state, and city law against the remaining defendants are dismissed as without legal basis. She was not treated differently from similarly situated employees because of her age, race, or national origin.

## II. **Facts**

### A. Parties

Plaintiff, who identifies herself as a non-Caucasian Hispanic, was born on September 6, 1957. *See* Compl. ¶ 22. She is a resident of Brooklyn. *Id.* ¶ 15.

Defendant Fred Walsh was born on April 20, 1967. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. C 31:11-12 (Dep. of Fred Walsh), Doc. Entry 36, Feb. 29, 2012 ("Walsh Dep."). Beginning in the fall of 2004, Walsh was the principal at the School of International Studies in Brooklyn. Compl. ¶ 18.

4

Jeanette Smith was born on June 16, 1969. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. D 12:24 (Dep. of Jeanette Smith), Doc. Entry 36, Feb. 29, 2012 ("Smith Dep."). During the relevant period, she was an Assistant Principal at the School of International Studies. Compl. ¶ 19.

Both Walsh and Smith are Caucasian. *Id.* ¶ 19.

All three individuals are employees of the DOE, an agency of the City of New York. *See* Compl. ¶ 17.

### B. Sotomayor's Initial Employment with the DOE

Plaintiff began working for the DOE in August 1999. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. B 43:23 (Dep. of Gladys Sotomayor), Doc. Entry 36, Feb. 29, 2012 ("Pl.'s Dep."). She was initially hired as a substitute second grade teacher at P.S. 67. *Id.* 46:4-24.

In September 2002, Sotomayor transferred to the Secondary School for Law, Research and Journalism, where she was assigned to teach sixth through eighth grade Spanish. *Id.* 49:13-16, 51:3-5. An Observation Report dated April 19, 2002 rated her lesson satisfactory overall, but highlighted as areas of improvement the "timing and pacing" of the lesson and the failure to "provide a multitude of varied activities so that student may explore the concept in question," to "maintain a clean area for students to work," and to display student work in the classroom. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. F (April 19, 2002 Observation Report), Doc. Entry 36, Feb. 29, 2012.

Plaintiff was "excessed" in the summer of 2003, requiring her to find a new position in another school. *Id.* 52:19 – 53:10. It is unclear from the record why she was excessed.

### C. Initial Tenure at the School of International Studies

In the fall of 2003, she began working at the School of International Studies, teaching sixth grade students in an inclusion bridge program. *Id.* 55:2-25. Sixth- to twelfth-grade students attend the School of International Studies. Walsh Dep. 6:20-22.

When the bridge program was discontinued the following year, Sotomayor was hired to teach middle school and high school Spanish beginning in 2004. Pl.'s Dep. 63:7-64:5. The interview team that hired her included defendant Walsh, who was then an assistant principal. *Id.*

From the 2004-2005 to the 2006-2007 school year, Sotomayor taught middle school and high school Spanish. *Id.* at 63:2-4; 70:10-12; 74:24 – 75:2. In the 2006-2007 school year, plaintiff was also assigned to the SAVE room, the designated classroom for students who have been removed from their classrooms for disciplinary infractions or given an in-school suspension. Pl.'s Dep. 74:24 – 75:2.

In this period, Walsh observed the plaintiff approximately once per year, and took the following actions:

- In April 2005, Walsh rated her lesson as overall satisfactory, but recommended that plaintiff needed to "take a more pro-active approach to classroom and time management" and to "work to create a more structured and productive classroom culture." Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. I (Apr. 11, 2005 Report on Observation), Doc. Entry 36, Feb. 29, 2012.

- In November 2006, Walsh noted that the plaintiff was "inconsistent" in ensuring that the lesson's objective was "explicitly stated or referred to by the teacher" and in maintaining the classroom environment in proper fashion. He also noted that her lesson did not have closure and did not take into account students' varied learning styles, and that no student work was on display. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. L (Nov. 21, 2006 Report on Observation), Doc. Entry 36, Feb. 29, 2012.

6

Walsh nevertheless wrote Sotomayor a letter recommending her for participation in the DOE's Aspiring Leadership Cohort Program. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. H (March 23, 2005 Letter), Doc. Entry 36, Feb. 29, 2012.

Sotomayor also received feedback from other administrators regarding the need to submit substitute lesson plans:

- In November 2004, Assistant Principal Caroline Garrett, who was then plaintiff's supervisor, advised Sotomayor that she had not yet submitted substitute lesson plans as she was required to do. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. G (Nov. 29, 2004 Letter), Doc. Entry 36, Feb. 29, 2012. Plaintiff argues that the letter was factually incorrect. Pl.'s Dep. 143:15 - 144:16.
- In January 2006, Assistant Principal Judith Willoughby advised Sotomayor that her lesson plans were overdue despite two verbal reminders. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. K (Jan.13, 2006 Letter), Doc. Entry 36, Feb. 29, 2012.

### D. 2007-2008 School Year

For the 2007-2008 school year, Sotomayor was assigned to teach middle school and high school Spanish and to monitor the SAVE room. She indicates that the problems with Walsh and Smith began that year. *See* Pl.'s Dep. 135:5-7.

#### 1. SLT Meeting

On November 1, 2007, plaintiff attended a meeting of the School Leadership Team (SLT) as a substitute for her union leader; there, she became upset and distraught. Pl.'s Dep. 116:8, 119:3-12. In a letter to file dated November 16, 2007, Walsh observed that she had "arrived late with a strong odor of alcohol on [her] breath; [she] frequently interrupted the meeting with unrelated issues; [her] words were slurred and [she] had an antagonistic and confrontational ma[nn]er." Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. Q (Nov. 16,

7

2007 Letter), Doc. Entry 36, Feb. 29, 2012. He noted that these observations were echoed by letters he received from all of the adult members of the SLT, and he concluded that her conduct was inappropriate and unprofessional. *Id.*

In her written response, Sotomayor explained that she was stressed at the time of the SLT meeting. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. O (Dec. 12, 2007 Letter), Doc. Entry 36, Feb. 29, 2012. She denied being under the influence of any substance. *Id.*

While Walsh wrote a letter to file regarding plaintiff's behavior at the SLT meeting, he allegedly resolved similar issues with younger Caucasian teachers informally, without such letters. *Id.* 124:13 – 125:25 ; 130:2 - 131:6. These issues involved infractions such as "being late, taking the day off if you party too much on Saint Patty's day, or if you decide to take a trip somewhere." *Id.* 125:18:21.

### 2. SAVE Room Incident

On December 12, 2007, plaintiff was supervising four students in the SAVE room who had been involved in a fight between Arab and African-American students. When Walsh entered the room, he noticed that several students were listening to their iPods through headphones in violation of school policy. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. R (Dec. 17, 2007 Letter), Doc. Entry 36, Feb. 29, 2012. Some were not engaged in academic activities as required by SAVE room procedures. *Id.* Walsh intervened, removing several students from the room, confiscating their iPods, and talking to them about school rules. *Id.* Plaintiff testified that defendant Walsh was "very . . . menacing towards the boys" during the incident. Pl.'s Dep. 113:10.

8

Sotomayor reacted in a January 18, 2008 letter, explaining that she had told students not

to listen to their iPods and that students were not engaged in academic work because they were

airing their feelings about the fight. Defs.' Statement of Undisputed Facts Pursuant to Local

Rule 56.1 Ex. S (Jan. 18, 2008 Letter), Doc. Entry 36, Feb. 29, 2012.

Plaintiff believes that Walsh's actions were discriminatory because "if I was a white

male, I don't think he would have gone in there and barged right in." Pl.'s Dep. 115:9-10.

> When other white teachers have covered the SAVE room, he is more warm,
> convivial. He doesn't get into the faces of the students. It's just a different
> demeanor and approach.

*Id.* 115:16-19. She identified specific Caucasian teachers, including Sara Davis and Christian

Bowen, who had been treated differently. Pl.'s Dep. 115:22-23.

### 3. Classroom Observations

Beginning in the 2007-2008 school year, Sotomayor began receiving more frequent

classroom observations from Walsh, as well as unsatisfactory ratings following those

observations.

- In December 2007, Walsh noted that, although plaintiff had a "pleasant rapport with students" and "the majority of students worked on the packet for the duration of the period," the quality of her instruction needed improvement. He also stated that she needed to hold students accountable to a higher standard, and to greet them as they entered the classroom. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. N (Dec. 21, 2007 Report on Observation), Doc. Entry 36, Feb. 29, 2012.

- In the spring of 2008, Walsh conducted several informal observations of plaintiff's classroom. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. T (Apr. 9, 2008 Letter), Doc. Entry 36, Feb. 29, 2012. After discussing his observations with Sotomayor, he memorialized them in an April 9, 2008 letter. He noted that Sotomayor was late to class on two occasions; that she was unable to provide lesson plans; that she did not acknowledge or record student tardiness; and that she did not ensure that students were on task during the classroom period. *Id.* He particularly faulted her "failure to plan meaningful, rigorous, and paced lessons." *Id.* He

reminded plaintiff that she should "arrive to class before the first bell rings, to set up [her] materials, greet [her] students at the door and set a positive tone and high expectation[s] for the class." *Id.*

### 4. Tentative Class Assignments for 2008-2009 School Year

In April 2008, teachers at the School for International Studies were asked to rank three choices of which subjects they wished to teach in the upcoming school year. On her preference sheet, plaintiff listed only her top choice, high school Spanish. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. V (2008-2009 Preference Sheet), Doc. Entry 36, Feb. 29, 2012. She was tentatively assigned to the classes she requested. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. W (Tentative Assignment), Doc. Entry 36, Feb. 29, 2012.

### 5. First FMLA Leave

In June 2008, Sotomayor learned that her father had been diagnosed with cancer. Pl.'s Dep. 196:1-9, 197:21-24. She requested family medical leave in order to care for her father. *Id.* 197:5-7. It was granted. *Id.* 200:23 – 201:1.

### E. 2008-2009 School Year

### 1. Change in Class Assignment

On June 25, 2008, approximately one week after Sotomayor requested FMLA leave, Walsh changed her tentative class assignment for the 2008-2009 school year. Rather than teaching high school Spanish exclusively, plaintiff was assigned to teach high school Spanish 1, eight grade Spanish, and sixth grade International Studies, and to preside at the SAVE room. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. X (June 25, 2008 Emails), Doc. Entry 36, Feb. 29, 2012. When plaintiff asked why her preference had been changes, Walsh explained that it was required by the needs of the school. *Id.* Defendants claim the

10

change was made due to budgetary constraints and the licenses which plaintiff held. *See id.*;
Walsh Dep. 171:22-172:12.

Plaintiff filed a grievance, claiming that her new schedule was onerous. Defs.' Statement
of Undisputed Facts Pursuant to Local Rule 56.1 Ex. Y (Step 1 Grievance), Doc. Entry 36, Feb.
29, 2012. Following a hearing on August 28, 2008, Walsh denied her grievance. Defs.'
Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. Z (Step 1 Grievance
Determination), Doc. Entry 36, Feb. 29, 2012. At plaintiff's request, a hearing before an
independent arbitrator was provided; the arbitrator denied the grievance. Defs.' Statement of
Undisputed Facts Pursuant to Local Rule 56.1 Ex. AA (Sept. 24, 2008 Arbitration Decision),
Doc. Entry 36, Feb. 29, 2012.

### 2.  Classroom Observations

Plaintiff returned to work at the beginning of the new school year in September 2008.
Pl.'s Dep. 201:2-5. In the year that followed, plaintiff continued to be observed more frequently
than in years past.

Defendant Smith, Sotomayor's supervisor, conducted several informal and formal
observations of plaintiff's classes:

- Plaintiff was observed informally on September 8th and 11th. Smith
  provided suggestions for using instructional time more effectively and
  recommended that plaintiff: 1) work on student engagement, and 2) hold
  students accountable for their actions. Defs.' Statement of Undisputed
  Facts Pursuant to Local Rule 56.1 Ex. BB (Emails RE: Sept. 8, 2008
  Informal Observation), Doc. Entry 36, Feb. 29, 2012; Defs.' Statement of
  Undisputed Facts Pursuant to Local Rule 56.1 Ex. CC (Emails RE: Sept.
  11, 2008 Informal Observation), Doc. Entry 36, Feb. 29, 2012.

- At her request, plaintiff was formally observed on November 17th. The
  lesson was rated satisfactory, although Smith noted several areas for
  improvement, including improving the pacing of her lesson and better

11

utilizing class time. Defs.' Statement of Undisputed Facts Pursuant to
Local Rule 56.1 Ex. DD (Dec. 1, 2008 Observation Report), Doc. Entry
36, Feb. 29, 2012.

As a result of these observations, Smith arranged to meet with plaintiff weekly to go over

her lesson plans and unit outlines. *Id.* Sotomayor also met with Marci Mann, an Instructional

Specialist from the Community Learning Support Organization, on several occasions. Defs.'

Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. EE (Dec. 20, 2008 Letter), Doc.

Entry 36, Feb. 29, 2012; Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex.

FF (Log of Assistance), Doc. Entry 36, Feb. 29, 2012. Plaintiff does not consider her meetings

with the Instructional Specialist to constitute professional development, since many other

teachers were present during the sessions. Pl.'s Dep. 293-94.

Sotomayor and Smith had several additional discussions regarding the absence of

substitute lesson plans.

- On March 19th, Sotomayor was absent and had not left copies of substitute
  lesson plans for her International Studies class, as required by the faculty
  handbook. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1
  Ex. JJ (Mar. 23 and Mar. 31 Letters RE: Substitute Work), Doc. Entry 36,
  Feb. 29, 2012. Smith advised plaintiff that she had scheduled a meeting for
  March 25th to discuss this deficiency, and that, because the meeting could lead
  to disciplinary action, plaintiff could bring a union representative. *Id.*
  Plaintiff responded by letter that "there was plenty of work available for my
  students on top of a desk next to the computers. In addition, there's additional
  work that subs can draw from in the event more is needed." *Id.* She disputed
  whether leaving substitute work was part of her contract or could subject her
  to disciplinary action. *Id.*

  Following the meeting, Smith "conclude[d] that [plaintiff] failed to
  follow the established procedure for submitting 3 substitute lesson plans . . . as
  outlined in the faculty handbook." *Id.* Sotomayor agreed to submit plans no
  later than April 3rd. *Id.* On April 2nd, Sotomayor submitted a letter disputing
  Smith's characterization of events, stating that they had established at the
  meeting that Smith "had additional plans (6th grade work) on file and that you
  found other plans available in my classroom pursuant to school policy."
  Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. KK

12

(Apr. 2, 2009 Letter), Doc. Entry 36, Feb. 29, 2012.  She asked that Smith's letter memorializing the April 25, 2009 meeting be withdrawn from her file. *See also* Pl.'s Dep. 147:14 – 149:2.

- On May 8th, Smith notified plaintiff that all of the lesson plans that were on file had been used by previous absences and the stock needed to be replenished. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. LL (May 8, 2009 Email), Doc. Entry 36, Feb. 29, 2012.

Plaintiff believes that Smith was discriminating against her by raising this issue, since she has substituted for other teachers who had not left lesson plans and she is not aware of other teachers who received similar letters.  Pl.'s Dep. 149:18 – 152:11.

Plaintiff was also formally and informally observed by Walsh:

- On February 3rd, the first day of the new semester, Walsh walked through the school briefly observing all of his high school classes. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. HH (Emails RE: Spring Term), Doc. Entry 36, Feb. 29, 2012.  When he dropped by plaintiff's classroom twenty minutes into the period, he saw students still wearing their coats with their book bags on their backs. *Id.*  None of these students were actively participating in classwork. *Id.*

- On March 5th, Walsh formally observed the plaintiff. He met with her the following day to discuss the lesson, which he considered to be unsatisfactory. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. II (Mar. 9, 2009 Observation Report), Doc. Entry 36, Feb. 29, 2012.  His criticisms were similar to previous observations, citing her failure to properly pace the lesson and failure to engage her students. *Id.*  He suggested techniques for improvement. *Id.*

- On April 29th, Smith again formally observed the plaintiff and concluded that her lesson was unsatisfactory. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. MM (May 8, 2009 Observation Report), Doc. Entry 36, Feb. 29, 2012.  Many of the criticisms and recommendations were similar to those from past observations. *Id.*

By a letter dated Friday, May 15th, Sotomayor was advised that Instructional Specialist Mann would conduct a formal observation of her fifth period class. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. OO (May 15, 2009 Letter), Doc. Entry 36, Feb. 29, 2012.  A pre-observation conference would be conducted the same day during second

13

period. *Id.* While there is no required notice period prior to conducting a formal observation, it is said by defendants to be unusual to have a pre-observation meeting on the same day as the observation itself. Walsh Dep. 125:4-19, 186:22 - 187:5. According to Walsh, Mann was brought in as the Superintendent's designee and outsider to observe the plaintiff with a neutral set of eyes because Walsh had reported that Sotomayor was at risk of an unsatisfactory rating. *Id.* 191:3-11; 195:13-25. Sotomayor did not see the letter until she arrived at work on Monday, May 18th. Pl.'s Dep. 205:7-14.

After observing plaintiff's lesson, Mann noted that, while there were some improvements compared to previous lessons she had observed Sotomayor teach, the lesson was overall unsatisfactory. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. PP (May 18, 2009 Observation Report), Doc. Entry 36, Feb. 29, 2012. Mann's report echoed many of Walsh and Smith's previous criticisms and suggestions for improvement, including that she needed to work on her pacing and improve the learning environment by using visual aids to engage the students. *Id.*

### 3. Concerns About Record Keeping

In a Friday, May 15th letter, Walsh asked Sotomayor to meet with him the following Tuesday, May 19th, to discuss grading and record keeping for her students. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. NN (May 15, 2009 Letter), Doc. Entry 36, Feb. 29, 2012. In particular, he was concerned that one of her students had failed all classes except for plaintiff's class, despite poor attendance. Walsh Dep. 197:24 – 198:14. This meeting never took place due to Sotomayor's FMLA leave of absence, which is discussed below. Pl.'s Dep. 205:5-7. Plaintiff believes that Walsh's inquiry was another form of intimidation. *Id.* 211.

14

### 4. Unsatisfactory Rating

Plaintiff received a "U" (unsatisfactory) rating on her Annual Performance Review for the 2008-2009 school year. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. QQ (2008-2009 Annual Evaluation), Doc. Entry 36, Feb. 29, 2012. She appealed the rating before the DOE's Office of Appeals and Reviews. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. SS (Notice of Appellant), Doc. Entry 36, Feb. 29, 2012. Her appeal was eventually denied following a hearing. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. TT (June 8, 2010 Letter), Doc. Entry 36, Feb. 29, 2012.

### 5. Second FMLA Leave

On Saturday, May 16th, Sotomayor notified Walsh by email that she was taking a second FMLA leave effective May 19th. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. KKK (May 16, 2009 Email), Doc. Entry 36, Feb. 29, 2012. Walsh approved her request with reservations:

> Ms. Sotomayor was absent for the last 6 days of the school year 2007-2008 regarding her father's illness. The total of her absences result in 11 days.
>
> On May 18th she informed me that as of May 19th, she had to take a leave of absence to take care of her terminally ill father. She would be returning for the start of the school year 2009.
>
> Ms. Sotomayor is at risk of an Unsatisfactory rating due to instructional incompetence. It is my understanding that by taking a LOA, her "U" rating is automatically changed to a "C" rating.

Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. RR (May 28, 2009 Letter), Doc. Entry 36, Feb. 29, 2012. Plaintiff disputes that this is the "real" version of the letter, because another version of the letter which omits the reference to her rating was uncovered in discovery. Pl.'s Decl. in Opp. Ex. 6 (May 28, 2009 Letter), Doc. Entry 44, Apr. 20, 2012.

15

### F.  2009-2010 School Year

When plaintiff returned to work in September 2009, she initially taught high school

Spanish and middle school English as a Second Language (ESL).  Pl.'s Dep. 78:6-18.  Although

she was supposed to begin teaching a Regents' preparation class in the second semester, at the

last minute, her class was changed to Essay Writing for middle school ESL Learners.  *Id.* 78:15 -

80: 15.  At least two other teachers—one a Caucasian male, the other a Haitian female—were

similarly assigned classes with little notice.  *Id.* 81:12 – 83:4.  Plaintiff does not know the ages of

either of these teachers.

Other than receiving teaching assignments that were not her preference, Sotomayor does

not allege that she was discriminated or retaliated against during the 2009-2010 school year.  She

received a satisfactory rating on her Annual Performance Evaluation that year.  *Id.* 263:16-18.

### G.  2010-2011 School Year

#### 1.  Class Assignment

During the 2010-2011 school year, plaintiff was assigned to teach high school Spanish,

middle school ESL, and ESL test coordination.  Pl.'s Dep. 83:14-19.

#### 2.  Classroom Observations

Defendant Walsh again conducted several formal and informal observations of the

plaintiff:

- On December 2nd, Walsh determined that plaintiff's performance was unsatisfactory
  following an observation of her second and third period classes. Defs.' Statement of
  Undisputed Facts Pursuant to Local Rule 56.1 Ex. XX (Dec. 2, 2010 Observation
  Report), Doc. Entry 36, Feb. 29, 2012. He criticized the lack of structure in her
  lesson, as well as her failure to manage the classroom effectively.

  Plaintiff alleges that the "observation was unfair and factually false and occurred
  on the day after a possible bedbug infestation was discovered in plaintiff's classroom

16

and during a time that the students were emotionally upset as a result of preparing for midterms." Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. UU (Pl.'s Resp. to Defs.' Interrogatories), Doc. Entry 36, Feb. 29, 2012 ("Pl.'s Resp. to Defs.' Interrogatories"); Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. YY (Dec. 6, 2010 Email), Doc. Entry 36, Feb. 29, 2012.

- On December 21st, following a formal observation, Walsh again concluded that plaintiff's lesson was unsatisfactory: the lesson was poorly planned, and she had failed to implement his suggestions following his previous observation. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. ZZ (Jan. 3, 2011 Observation Report), Doc. Entry 36, Feb. 29, 2012.

    Plaintiff initially claimed that, during the observation, Walsh "was very confrontational towards [her] and the students displayed shock that defendant Walsh would, in their presence, treat plaintiff in such a menacing and threatening manner." Pl.'s Resp. to Defs.' Interrogatories. She later clarified that "it wasn't so much as he got into my face, it was surprising that he came in on that day [December 21, 2010], because it was a day the kids would probably have been agitated. We had a random scanning conducted that week, right before the holiday. Oddly enough, one of the kids was screaming in the halls, they felt violated because they had all of their electronic devices taken." Pl.'s Dep. 190:10-20.

- On February 17th, after escorting two late students to Sotomayor's class, Walsh conducted another informal observation. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. AAA (Feb. 18, 2011 Observation Report), Doc. Entry 36, Feb. 29, 2012. He observed that approximately half of her students were not engaged in any work and that she was not keeping records of lateness or attendance. *Id.* She could not provide him with a lesson plan when asked. *Id.* He concluded that her lesson was unsatisfactory. *Id.*

    Plaintiff claims that, during the observation, Walsh was "disruptive, abusive, and acted in a way to undermine the learning process." Pl.'s Resp. to Defs.' Interrogatories 8.

Assistant Principal Judith Willoughby, who is not a party to this action, also negatively

critiqued plaintiff's performance:

- In an October 29th email, Willoughby criticized the condition and appearance of plaintiff's classroom during the prior evening's Parent-Teacher conferences and scheduled a meeting to address the issue. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. WW (Oct. 29, 2010 Email), Doc. Entry 36, Feb. 29, 2012.

- On March 30th, Willoughby conducted a formal observation of Sotomayor. Although she rated the lesson as satisfactory, she listed several areas of improvement, such as keeping her classroom and materials cleaner and better

17

organized. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. BBB (Mar. 30, 2011 Observation Report), Doc. Entry 36, Feb. 29, 2012.

Plaintiff received a satisfactory rating on her Annual Performance Evaluation for the year. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. EEE (2010-2011 Annual Evaluation), Doc. Entry 36, Feb. 29, 2012.

### 3. **Failure to Pay for Prep Period**

Plaintiff alleges that she was not paid for preparation periods on two occasions in the spring of 2011. Pl.'s Resp. to Defs.' Interrogatories 8. During that semester, plaintiff chose to use the period scheduled as her professional period for ESL Administration, Period 1, as her preparation period, and to use her scheduled preparation period, Period 4, as her professional period. Pl. Dep. 240:9 - 243:4. After she was assigned to conduct practice test administration for ESL students on two occasions during Period 1, Sotomayor filed a grievance, alleging she was "not being paid for prep periods." *Id.* The grievance was denied because the period during which she was assigned to administer the tests was her scheduled professional period, not a prep period. *Id.* Her UFT representative agreed with Walsh that plaintiff was not entitled to be paid for administering practice tests during her scheduled professional period. *Id.*

### H. 2011-2012 School Year

### 1. **Initial Class Assignment**

By a memorandum dated June 24th, 2011, Sotomayor was initially advised that her tentative assignment for the 2011-2012 school year would be teaching sixth grade science and seventh grade social studies. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. FFF (June 24, 2011 Mem.), Doc. Entry 36, Feb. 29, 2012.

18

On June 27th, she filed a grievance on the grounds that her assignment required "excessive preparation." Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. GGG (June 27, 2011 Step I Grievance), Doc. Entry 36, Feb. 29, 2012.

### 2. **Plaintiff Initially Excessed**

On June 28th, plaintiff was notified that she was being excessed from the school. Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 Ex. HHH (June 28, 2011 Excess Letter), Doc. Entry 36, Feb. 29, 2012. According to defendant Walsh, teachers are excessed when a budgetary shortfall requires a principal to go through the school's table of organization to look for positions which lack funding. Walsh Dep. 249:12-16. Sotomayor was set to be excessed because he believed that there was insufficient money to pay all of the teachers on his staff. *Id.* 249:12 - 253:13. Sotomayor in particular was chosen, Walsh contends, because of the needs of the school. While plaintiff has a Common Branch License to teach pre-kindergarten to sixth grade and an Initial Spanish License, she has never received a permanent Spanish license. Pl.'s Dep. 19:17 – 22:11. Walsh believed that he needed to replace a common branch licensed teacher with a licensed ESL teacher. Walsh Dep. 249:12 - 253:13. She was the only teacher scheduled to be excessed that year. *Id.* 250:6-7.

In late June 2011, Walsh was informed by the human resources person in the school's network that it was not necessary to excess a teacher. *Id.* 249:20 – 251:20. He immediately called Sotomayor to let her know that she could return to the School for International Studies for the 2011-2012 school year. *Id.*

### 3. **Plaintiff's Assignments for the 2011-2012 Year**

When Sotomayor returned to the school in the fall of 2011, she was assigned to teach sixth and seventh grade Social Studies and Advanced High School ESL. Pl. Dep. 109:5-8. She has not filed a grievance regarding this assignment.

Plaintiff was assigned to teach in Room 117. *Id.* 265:16-18. She complains that this room assignment is undesirable because it had "become a dumping ground for faculty who were getting rid of their stuff" and the classroom contained old or broken desks. *Id.* 265:19 - 266:16. Although defendant Smith said that she would remove these objects from plaintiff's classroom, she apparently never did. *Id.* 226:17-22.

### 4. Loss of "Per Session" Position

She also claims that she lost an opportunity for a "per session" position, which is a job performed by teachers before or after school hours, such as supervising or leading extra-curricular activities or offering extra academic help. *Id.* 243:19 - 251:7. Plaintiff held per session positions continuously from the 2006-2007 school year to the 2010-2011 school year. *Id.* Most of these positions were for conducting an afterschool ESL program. *Id.* At the time of Sotomayor's deposition, she did not have a "per session" position for the 2011-2012 school year, because the ESL afterschool program had not yet started. *Id.* 247:16-25. Other extracurricular activities, such as sports programs, had begun. *Id.* Plaintiff believes that the delay in the launch of the ESL afterschool program is the result of discrimination. *Id.* 249:17-25.

On January 9, 2012—after plaintiff's deposition in this case was taken—a "per session" vacancy notice was posted for a teacher to conduct an afterschool program for English Language Learners. Decl. of Fred Walsh ¶ 12, Doc. Entry 47, May 11, 2012 ("Walsh Decl."). Sotomayor

did not apply for the position. *Id.* ¶ 13. She has never been denied the opportunity to work a "per session" job that she has applied for. Pl. Dep. 251:4-7.

## I.   Current Employment

At the time of the hearing, Sotomayor was still employed at the School of International Studies. *See* Tr. of Hr'g, May 15, 2012.

## J.   Evidence of Animus

### 1.   School Composition

Since Walsh became principal, the number of teachers at the school fluctuated between thirty-two and forty. Walsh Dep. *Id.* 66:18-16. Most of the teachers at the school are Caucasian. *Id.* 74:19-23. During his tenure, there have been at least nine faculty members of Hispanic national origin and at least seven African-American faculty members. *Id.* 69-72; 69:24 – 70:20. Most of the teachers are between thirty and forty years old. *Id.* 79:21-23. Six or seven teachers are more than forty years old. *Id.* 77:24-25.

### 2.   Differential Treatment of Plaintiff

In addition to the facts outlined above, plaintiff alleges that she was discriminated against because:

- Her room assignments were changed frequently, and "that did not happen with the white staff." Pl. Dep. 136:14-16.

- She has historically received a disproportionate number of at-risk students with special needs compared to the other Spanish teacher. *Id.* 85:21- 86:5. The other teacher is in her early 30s. *Id.* 89:12-13.

- She was subjected to multiple observations each school year. Most tenured teachers received only two formal observations during an average school year. Walsh Dep. 124:22-24.

21

Walsh admits that underperforming teachers receive more frequent observations, and that he considered Sotomayor to be underperforming. *Id.* 117:9-15.

- She received undesirable classroom assignments. No other teachers shared classrooms for two consecutive years. Pl. Dep. 106:16-23.

No other teacher has applied for FMLA leave. Walsh Dep. 216:6:22.

### 3. **Discriminatory Comments**

Plaintiff admits that Walsh never made any discriminatory or derogatory statements to her or other staff. She contends, however, that he has made such statements regarding students, "particularly about the type of clientele they wanted to attract." Pl.'s Dep. 138:3-7. These comments included:

- Walsh wanted to attract "higher performing students. Students that not necessarily are English language learners." *Id.* 138:9-11. According to plaintiff, the "types of students he wishes to attract are from middle class and upper middle class not necessarily the students that are from other ethnicities who reside in the community, primarily the Arabic-speaking community and the children who come from the various housing projects." *Id.* 273:1-7. Sotomayor also claims that she observed Walsh reject minority students who attempted to register at the school, even though it was under capacity. *Id.* 274:9 – 275:3.
- Following a bedbug infestation, Walsh "implied the kids don't clean up after themselves, they're not washing, they're wearing their clothes more than once. The students themselves felt they were being discriminated against, that he was being prejudicial that they wouldn't wash." *Id.* 276:12-17.

Plaintiff believes these statements are discriminatory because the current student population is "predominately Hispanic, predominately African American, and a huge percentage of the English language learners are from the community who are Arab speaking." *Id.* 138:21 – 139:1.

While Smith never made any discriminatory or derogatory statements towards her or other staff, Sotomayor claims that Smith has made such statements regarding students. *Id.* 165:1-3. Specifically, in reference to "a couple of newly arrived Arab girls" who had been

22

roaming the halls without being sanctioned, Smith said, "You know how these girls are. They think they can do whatever they want." *Id.* 165:14-19. Plaintiff also claims that Smith spoke to her differently than Smith spoke to other teachers. Smith allegedly addressed Sotomayor in a condescending tone. *Id.* 169:5-6.

> [Her] communication style is not warm and professional. It is stern, adversarial and curt. I would see her engage with the other faculty members in the school and that was a totally different response.

*Id.* 160:25 - 161:3. Smith is claimed to be warmer and more professional towards men. *Id.* 163:16-18.

### 4. **Differential Treatment of Others**

Plaintiff claims that other older and/or non-Caucasian tenured teachers were treated similarly to plaintiff, while Caucasian and younger teachers were treated more favorably. She alleges:

- Walsh and Smith "targeted" other "faculty of color" by making a series of "surprise, drop by observations." *Id.* 140:14 – 141:18. Plaintiff claims that Walsh did not make similar informal observations of younger Caucasian teachers. *Id.* 135:1-4. She admits, however, that only one of the other Hispanic faculty members that she could remember being on staff since Walsh became principle was subject to the same "administrative strategies" of informal observations and negative write-ups. *Id.* 253:9 – 258:23.

- Walsh only documented informal observations of underperforming teachers. Walsh Dep. 159:3-18.

- Other than the plaintiff, he issued unsatisfactory formal observation reports only on underperforming teachers. *Id.* 162:25 – 163:15. All of the tenured teachers who received these reports were older and/or non-Caucasian. *Id.*

- Walsh has given six tenured teachers unsatisfactory year end ratings during his tenure, all of whom were older and/or non-Caucasian. *Id.* 226:16 – 227:2.

- Walsh identified two tenured teachers other than the plaintiff who have been underperforming at one time or another. *Id.* 120:8 -122:23. One is an African-American woman who is approximately thirty years old. *Id.* The other is a

Middle Eastern man in his mid-fifties or sixties. *Id.* He did not identify any tenured younger Caucasian teachers as underperforming. *Id.*

Walsh has since stated that he was mistaken at his deposition, and that the male teacher identified was not given an unsatisfactory rating. Walsh Decl. ¶¶ 10-11.

- In addition to plaintiff, only older and/or non-Caucasian teachers are listed in the log of assistance, which "documents any professional development meetings" with "teachers who have a demonstrated pattern of incompetence." Walsh Dep. 227:12 – 229:15.

- Other than the plaintiff, Walsh could recall only two other tenured teachers who received at least two letters to file. Both were African-American women he considered to be underperforming. *Id.* 144.

- Walsh sought to dismiss Clarissa Clay, an African-American teacher, after rating Walsh found that two tenured teachers who were approximately sixty-five years old had consistently underperformed for two years in a row. *Id.* 96:5-25. One teacher retired; the other was assigned elsewhere. *Id.*

- her performance unsatisfactory for two consecutive years. Walsh Dep. 33:98 – 34:2. At a formal termination proceeding, seventeen of the nineteen charges of incompetence against Clay were sustained. *Id.* 33:16-19. Clay was required to pay a fine and attend remedial coursework. *Id.*

- Walsh terminated a sixty year-old African-American teacher during her probationary period. *Id.* 37:14 – 38:7.

- Walsh "tends to hire white men, young women, young white women." Pl. Dep. 75:4-6. She did not point to any specific instances in which an older or non-Caucasian teacher was replaced by a younger and/or white teacher.

Defendants note several instances in which teachers who were Caucasian were treated

similarly to the plaintiff:

- A Caucasian female teacher under 40 years old received multiple disciplinary letters to file in the course of a school year. Walsh Dep. 149:7-17.
- A Caucasian male teacher under 40 years old received a "U" (unsatisfactory) rating on his Annual Performance Evaluation for the 2009-2010 school year. Walsh Decl. ¶ 9.
- For the 2008-2009 school year, plaintiff was the only pedagogical employee who received a "U" rating. See Walsh Decl. Ex. A (Chart of Ratings for 2008-2009 School Year). All sixteen of the

24

other non-Caucasians and all fourteen of the other "older" pedagogues received satisfactory ratings that year. *Id.*

- For 2009-2010 school year, two pedagogical employees received "U" ratings: a Caucasian teacher under 40 years and a Caucasian teacher over 40 years old. *See* Walsh Decl. Ex. B (Chart of Ratings for 2009-2010 School Year). All fourteen non-Caucasians and fifteen of the sixteen "older" pedagogues (including plaintiff) received satisfactory ratings that year.

- For the 2010-2011 school year, two pedagogical employees received "U" ratings: an Arabic teacher over 40 years old and a Caucasian teacher over 40 years old. Walsh Decl. Ex. C (Chart of Ratings for 2010-2011 School Year). Twelve of the thirteen non-Caucasians and fifteen of the seventeen "older" pedagogues (including plaintiff) received satisfactory year end ratings for the 2010-2011 school year.

## III.    Procedural History

On September 8, 2009, plaintiff filed a written charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 9. She commenced the instant action on July 26, 2010.

## IV.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). In ruling on a motion for summary judgment, the evidence must be construed in the light most favorable to the non-moving party and all reasonable inferences drawn in her favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247–50, 255; *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party appears to have met this burden, the opposing party must produce evidence that raises a

25

question of material fact to defeat the motion.  *See* Fed. R. Civ. P. 56(e).  This evidence may not consist of "mere conclusory allegations, speculation or conjecture."  *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

## V.   **Claims Against City Are Dismissed**

All claims against the City of New York are dismissed.  The City and the DOE are separate legal entities, and the City cannot be held liable for the alleged torts of DOE employees.  *E.g. Perez v. City of New York*, 837 N.Y.S.2d 571, 572 (1st Dep't 2007) ("The City cannot be held liable for [torts allegedly committed by the DOE and its employees].");  *Falchenberg v. New York Dep't of Educ.*, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005) ("[T]he City and DOE are separate and distinct entities. . . . In the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it.").  Because plaintiff alleges acts committed by the DOE and its employees, the City of New York is not a proper party.

## VI.   **Statute of Limitations for NYSHRL and NYCHRL Claims**

### A. **One Year Statute of Limitations Applies to Claims Against the DOE**

In general, the statute of limitations under the NYSHRL and the NYCHRL is three years.  N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-502(d); *Koerner v. State of New York*, 467 N.E.2d 232, 233-34 (N.Y. 1994) (holding that the three year statute of limitations applies to discrimination claims under the NYSHRL).

New York law provides for a shorter statute of limitations for claims against schools, school districts, and boards of education.  N.Y. Educ. Law § 3813(2-b) ("[N]o action or special proceeding shall be commenced against any [school, school district, board of education, or an

26

'officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four'] more than one year after the cause of action arose."). The shorter statute of limitations also applies to an "officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four." N.Y. Educ. Law § 3813(1). "Article 85 schools are statutorily designated 'special schools,' including schools for the instruction of the deaf and blind, as are schools governed by Chapter 1060 under the 1974 laws." *Richards v. Calvet,* No. 99 Civ. 12172, 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (holding that section 3813(1) does not apply to those claims against school principal because he is not an "officer" within the meaning of the statute).

Principals and other school administrators are not officers of a board of education; unless these administrators are employed at the special schools specified by the statute, claims against them are not subject to the one year statute of limitations. *Id.*; *see also Fierro v. City of New York,* 591 F. Supp. 2d 431, 447 (S.D.N.Y. 2008) (holding that plaintiff's claims against the school principal are not barred by one-year statute of limitations because the principal "is not an officer within the meaning of section 3813"), *rev'd on other grounds,* 341 Fed. Appx. 696 (2d. Cir. 2009).

Plaintiff's claims against the DOE under the NYSHRL and the NYCHRL are subject to the one year statute of limitations. *Id.*; *Amorosi v. South Colonie Ind. Cent. Sch. Dist.,* 880 N.E.2d 6, 10 (N.Y. 2007) ("[T]he one-year limitation prescribed in Education Law § 3813(2–b) should govern discrimination claims against a school district.").

27

The shorter statute of limitations does not apply to plaintiff's claims against Smith or Walsh. Defendants, as the moving party, have the burden of coming forward with evidence demonstrating that Smith and Walsh are "officers" of a board of education or special school as defined by section 3813. They have failed to do so.

### B. Time Bar Only Applies to NYSHRL Claims Against DOE

Since the instant action was filed on July 26, 2010, under a strict application of the statute of limitations, claims against the DOE for discriminatory acts that occurred before July 26, 2009 would be time barred. Plaintiff urges that actions that occurred prior to this date can nevertheless be considered under the continuing violations doctrine. Under this doctrine, when a plaintiff experienced a "continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir. 1992); *see also Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001).

In 2002, the Supreme Court limited this long-standing rule as it applies federal employment discrimination claims, holding that the continuing violation exception did not apply to discrete, time-barred incidents, even where those incidents were related to actionable ones:

> [A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period . . . . A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.

*Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002). It defined a "discrete act" as an action such as "termination, failure to promote, denial of transfer, or refusal to hire" that "constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. The continuing violations doctrine was available in harassment claims, by contrast, because "[t]he 'unlawful

28

employment practice' . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115.

### 1. **NYSHRL Discrimination Claims Against DOE Time Barred**

The narrower definition of the continuing violations doctrine under *Morgan* applies to plaintiff's discrimination claims under state law. *E.g. Milani v. International Business Machines Corp., Inc.,* 322 F. Supp. 2d 434, 452 n.32 (S.D.N.Y. 2004) (holding that *Morgan* applies to NYSHRL claims). Her claims pertaining to acts which occurred prior to July 26, 2009, including disciplinary letters issued to plaintiff during the 2007-2008 and 2008-2009 school years; formal and informal observations of plaintiff during the 2007-2008 and 2008-2009 school years; plaintiff's assignments for the 2008-2009 school year, and the June 18, 2009 "U" rating, are time barred and are dismissed.

### 2. **NYCHRL Claims Against DOE Timely**

Although earlier decisions applied *Morgan* to NYCHRL claims, *e.g. Milani,* 322 F. Supp. 2d at 452 n.32, New York state courts have since held that the prior, more generous, continuing violations doctrine continues to apply to claims under that statute, *Williams v. N.Y.C. Hous. Auth.,* 872 N.Y.S.2d 27, 35 (1st Dep't 2009). Otherwise time-barred discrete acts can be considered timely "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001) (internal citations and quotations omitted).

29

In the instant case, the allegedly discriminatory observations, negative performance ratings, and letters to file occurring before July 26, 2009 are discrete acts. *See, e.g., Valtchev v. City of New York,* 400 Fed. Appx. 586, 589 (2d Cir. 2010) (holding that negative evaluations are discrete acts which do not trigger the continuing violation exception); *Siddiqi v. N.Y.C. Health & Hosps. Corp.,* 572 F. Supp. 2d 353, 366 (S.D.N.Y. 2008) ("Each negative performance evaluation is a discrete act."); *Smith v. N.Y.C. Dep't of Educ.,* 09 Civ. 9256, 2011 WL 5118797, at *5 (S.D.N.Y. 2011) (Cote, J.) (holding that "an unsatisfactory rating following a classroom observation" is a discrete act for the purposes of the continuing violations doctrine).

Construing the record in the light most favorable to the plaintiff, these discrete acts could be considered part of a single, continuing policy of discrimination against Sotomayor by defendant Walsh. He is alleged to have discriminated against plaintiff by subjecting her to an inordinate number of formal and informal observations, and by giving her negative ratings following those observations. This pattern of activity could be found to have begun in the 2007-2008 school year and continued into the 2010-2011 school year. The discriminatory conduct is sufficiently similar to be considered part of a single policy. *Compare Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.,* No. 06-CV-6027, 2007 WL 108470, at *4 (W.D.N.Y. Jan. 12, 2007) (holding that the continuing violation doctrine was inapplicable where plaintiff "asserts that she was subject to a number of *separate* evaluations and classroom observations during a four-year period made by *distinct* individuals, *each of whom* is alleged to have discriminated against her," since each event constituted a discrete act (emphasis added)).

Claims based upon Walsh's pre-July 26, 2009 acts are timely for the purposes of plaintiff's NYCHRL discrimination claim. The DOE does not dispute that it can be held liable for such conduct of Walsh for the purpose of these claims.

30

### 3.  **NYSHRL Harassment Claim Against DOE Timely**

To the extent that these discrete acts cumulatively create a hostile work environment, the

continuing violations doctrine may save these claims under the NYSHRL.  Because some of the

allegedly discriminatory conduct occurred after July 26, 2009, all of the discriminatory acts

alleged may be considered timely for the purpose of plaintiff's state law hostile work

environment claim against the DOE. *See Morgan*, 536 U.S. at 122.

## VII.   **All Discrimination and Retaliation Claims Apply** *McDonnell Douglas* **Burden Shifting Framework**

To survive a motion for summary judgment, a plaintiff claiming discrimination under

Title VII, the NYSDHR, and § 1983 must satisfy the tripartite burden-shifting test enumerated in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *E.g. Spiegel v. Schulmann*, 604 F.3d

72, 80 (2d Cir. 2010) (applying *McDonnell Douglas* to employment discrimination claims under

the NYSHRL); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) ("Age

discrimination claims brought pursuant to the NYSHRL . . .are analyzed under the ADEA

framework, . . . just as gender discrimination claims brought pursuant to the NYSHRL . . . are

analyzed under the Title VII framework."); *Feingold v. New York*, 366 F.3d 138, 159 & n. 20 (2d

Cir. 2004) (reasoning that § 1983 equal protection claims parallel Title VII claims); *Back v.

Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004)

(applying *McDonnell Douglas* framework to § 1983 case).  Retaliation claims under these

statutes are analyzed under a modified version of the same test. *E.g. Tepperwien v. Entergy

Nuclear Operations, Inc.*, 663 F.3d 556, 568 n.6 (2d Cir. 2011) ("Retaliation claims under Title

VII are generally analyzed under a modified version of the *McDonnell Douglas* test.").  ADEA

claims and FMLA retaliation claims are also analyzed using the *McDonnell Douglas* framework.

31

*See, e.g., Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (applying *McDonnell Douglas* framework to FMLA retaliation claim); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (applying *McDonnell Douglas* framework to ADEA claim); *see also Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir. 2010) (holding that, even after the Supreme Court's decision in *Gross v. FBL Fin. Servs.,* 557 U.S. 167 (2009), the *McDonnell Douglas* burden-shifting framework continues to apply to ADEA claims).

Until recently, the right to recover under the NYCHRL was treated as congruent with the standard for similar claims under state and federal law. *See, e.g., Ferraro v. Kellwood Co.,* 440 F.3d 96, 99 (2d Cir. 2006) ("The standards for liability under these [state and city] laws are the same as those under the equivalent federal antidiscrimination laws."). In 2005, the New York City Council passed the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), amending the NYCHRL to "abolish parallelism between the [NYCHRL] and federal and state anti-discrimination law." *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir. 2009). "Nonetheless, as the NYCHRL and federal Title VII address the same type of discrimination, are textually similar, and employ the same standards of recovery, New York courts . . . resolve federal, state, and city employment discrimination claims consistently with *McDonnell Douglas Corp.*" *Hanna v. New York Hotel Trades Council*, 851 N.Y.S.2d 818, 822 (N.Y. Cnty. Sup. Ct. 2007); *see also Spiegel,* 604 F.3d at 80.

Pursuant to the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. *E.g. Leibowitz,* 584 F.3d at 498. The burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer can do so, the "burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons,

32

but were a pretext for discrimination." *Id.* (internal quotation marks and citation omitted). The plaintiff can sustain her burden by proving that "the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [the adverse employment decision] was motivated at least in part by . . . discrimination." *Tomassi v. Insignia Fin. Group,* 478 F.3d 111, 114 (2d Cir. 2007).

## VIII.    Federal Discrimination Claims Meritless

Plaintiff claims that the defendants discriminated against her by: 1) subjecting her to more frequent classroom observations, and giving her unsatisfactory evaluations following those observations, including unsatisfactory year-end rating for the 2008-2009 school year; 2) writing letters to her file regarding her behavior at an School Leadership Team meeting and the lack of substitute lesson plans; 3) assigning her to teach classes that were not in accord with her preference; 4) giving her an excessive teaching load; 5) giving her a subpar room assignment for the 2011-2012 school year; 6) initially excessing plaintiff from the school for the 2011-2012 school year, although she was later reinstated; 7) failing to pay her for two test administration periods; and 8) preventing her from performing "per session" work.

Sotomayor concedes that she cannot hold Smith and Walsh individually liable for these acts under Title VII or the ADEA. Pl.'s Mem. 2. These claims are dismissed.

Plaintiff cannot make out a *prima facie* case of discrimination under federal law. The only actions allegedly taken by defendants which were "materially adverse" to her are her inability to procure "per session" employment and failure to pay her for two periods in which she was administering tests. These incidents do not give rise to an inference of discrimination.

### A. Requirements of a *Prima Facie* Case

33

Under Title VII, the ADEA, and § 1983, the plaintiff can establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for her position and was satisfactorily performing her duties; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *E.g. Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). A claimant bringing suit under the ADEA must further demonstrate that age was not just a motivating factor behind the adverse action, but the "but-for" cause of it. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350-51 (2009). The plaintiff's burden of proof at this stage is minimal. *See Graham*, 230 F.3d at 39.

### 1. **Protected Class**

Sotomayor is a non-Caucasian woman over fifty of Hispanic national origin. Defendants do not dispute that plaintiff is a member of a protected class under the relevant statutes. *See, e.g.*, 29 U.S.C. § 631(a) (protecting "individuals who are at least 40 years of age"); 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."); 42 U.S.C. § 1983; N.Y. Exec. Law § 296(1)(a) ("It shall be an unlawful discriminatory practice . . . [f]or an employer . . . , because of an individual's age, race, . . . [or] national origin, . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."); N.Y.C. Admin. Code § 8-107(a) (same).

### 2. **Adverse Employment Action**

In order to constitute an adverse employment action, defendants must effect a "materially adverse change" in the terms and conditions of employment. *See Galabya v. N.Y.C. Bd. of*

*Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999). Such a change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) (internal citations and quotations omitted). Adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.*

### 3. Satisfactory Performance

"Whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge." *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). Negative performance evaluations can indicate that the plaintiff was not satisfactorily performing her duties. *Compare Gladwin v. Pozzi*, 403 Fed. Appx. 603, 606 (2d Cir. 2010) ("[Plaintiff] was never given a negative performance evaluation, and the record shows she was deemed by co-workers as 'very effective,' 'committed' and 'very efficient,' thus satisfying the second prong in demonstrating she was performing her duties satisfactorily."); *with Mastrolillo v. Connecticut*, 352 Fed. Appx. 472, 473-74 (2d Cir. 2009) ("[Plaintiff] did not establish that she performed her job satisfactorily, given the negative performance evaluations and her admitted lack of interest in teaching certain advanced level courses.").

### 4. Inference of Discrimination

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case."

35

*Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham,* 230 F.3d at 39.

### B. No *Prima Facie* Case

#### 1. Classroom Observations and Unsatisfactory Evaluations

Criticism of an employee in the course of evaluating and correcting her work is not an adverse employment action. *Weeks v. N.Y. State Div. of Parole,* 273 F.3d 76, 86 (2d Cir. 2001) (holding that notice of discipline and counseling memo insufficient to constitute adverse employment action). While "actions such as negative employment evaluation letters may . . . be considered adverse," *e.g., Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir. 2002), such appraisals must generally trigger other negative consequences to the terms and conditions of the plaintiff's employment in order to qualify as a materially adverse change, *e.g. Browne v. City Univ. of N.Y.,* 419 F. Supp. 2d 315, 333-34 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss, does not constitute an adverse employment action."); *see also, e.g., Fairbrother v. Morrison,* 412 F.3d 39, 56-57 (2d Cir. 2005) (holding that an unsatisfactory evaluation did not constitute an adverse employment action where plaintiff did not assert that evaluation negatively altered her compensation, benefits, or job title); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (holding that the jury could reasonably find that performance evaluation and its critical addendum did not constitute an adverse employment action where plaintiff "offered no proof that this evaluation had any effect on the terms and conditions of her employment" in holding that plaintiff was not entitled to judgment as a matter of law); *Solomon v. Southampton Union Free Sch. Dist.*, No. 08–CV–4822, 2011 WL 3877078, at *9 (E.D.N.Y.

Sept. 1, 2011) (holding that teacher failed to make out a prima facie case under Title VII as she "failed to provide *any* evidence that her negative evaluation affected her employment in any way, and therefore it is not an adverse employment action"); *Holder v. City of Yonkers*, No. 04 CIV. 10314, 2006 WL 1582081, *6 (S.D.N.Y. June 7, 2006) (holding that teacher's "negative formal observation evaluations and the negative annual evaluation for the 2004-05 academic year" did not constitute adverse employment actions in violation of Title VII).

Nor do more frequent performance evaluations qualify as an adverse employment action. *See, e.g., Hall v. N.Y.C. Dep't of Transp.*, 701 F. Supp. 2d 318, 335–36 (E.D.N.Y. 2010) ("Even assuming that plaintiff was subjected to excessive scrutiny, . . . criticism and reprimands, where, as here, such conduct did not lead to materially adverse employment consequences, it is not considered actionable disparate treatment."); *Castro v. N.Y.C. Bd. of Educ. Pers.*, No. 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar.12, 1998) ("[A]lthough . . . close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

Since neither the more frequent observations nor the negative reviews of the plaintiff's work had any material consequences on the terms and conditions of Sotomayor's employment, they are not adverse employment actions.

### 2. Letters to File

Like other negative performance evaluations, letters to file do not rise to the level of an adverse employment action where, as here, they do not trigger other adverse consequences, such as loss of pay. *See* Part VIII(B)(1).

### 3. Teaching Preferences

37

In order to constitute an adverse employment action, it is not enough that defendants'

gave plaintiff a subjectively less preferred teaching assignment; the assignment must be

"materially less prestigious, materially less suited to h[er] skills and expertise, or materially less

conducive to career advancement." *Galabya*, 202 F.3d at 641 (holding that plaintiff's transfer

from teaching junior high school keyboarding to special education students at one school to

teaching high school keyboarding to mainstream students at another did not constitute an adverse

employment action). *Compare Rodriguez v. Bd. of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980)

(holding that plaintiff's proffered evidence that she had tailored her master's and doctoral

coursework to prepare her for teaching junior high students so that her reassignment from

teaching junior high art classes to elementary school art classes rendered her twenty years of

experience useless was sufficient to establish an adverse employment action); *with, e.g., Missick

v. City of New York*, 707 F.Supp.2d 336, 349 n.5 (E.D.N.Y. 2010) (refusing to recognize

plaintiff's objection to having been reassigned from teaching younger children to teaching sixth

grade as an adverse employment actions); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.

Supp. 2d 249, 265 (E.D.N.Y. 1999) (holding that teacher's transfer to pre-kindergarten class

from first grade class was not an adverse employment action because teacher produced "no

material evidence that her transfer obliged her to perform tasks that were less appropriate for her

skills than her prior position or adverse to her in any other legally cognizable way").

While defendants failed to scrupulously honor each of Sotomayor's teaching

preferences, there is no evidence that her assignments were "materially less prestigious,

materially less suited to h[er] skills and expertise, or materially less conducive to career

advancement" such that they constituted an adverse employment action. *See Galabya*, 202 F.3d

at 641.

38

### 4. Teaching Load

"The assignment of a heavier teaching load to plaintiff for [a given] semester does not constitute an adverse employment action." *Browne,* 419 F. Supp. 2d at 333-34; *see also, e.g., De la Paz v. N.Y.C. Police Dep't,* No. 01 Civ. 5416, 2003 WL 21878780, at *4 (S.D.N.Y. Aug. 8, 2003) (finding that the assignment of extra work to plaintiff did not qualify as an adverse employment action); *Fridia v. Henderson,* No. 99 Civ. 10749, 2000 WL 1772779, at *7 (S.D.N.Y. Nov. 30, 2000) (finding that the plaintiff's allegations of excessive work did not amount to an adverse employment action). The reasonable work load assigned to the plaintiff does not trigger a finding of discrimination in this case.

### 5. Room Assignment

Mere undesirable classroom assignments generally do not rise to the level of an adverse employment action. *See, e.g., Galabya,* 202 F.3d at 640 (holding that "[a]s a matter of law, the disparity in working conditions—which reduces to the fact that teachers at [one school] rotate through classrooms whereas teachers at [another] have their own classrooms—may be characterized as minor" and is insufficient to establish an adverse employment action); *Klein v. New York Univ.,* 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) ("Undesired office assignments are not adverse employment actions.") (citing *Cunningham v. N.Y.S. Dep't of Labor,* 326 Fed. Appx. 617, 619–20 (2d Cir. 2009); *Stoddard v. Eastman Kodak Co.,* 309 Fed. Appx. 475, 479 (2d Cir. 2009)); *but see Ximines v. N.Y.C. Dept. of Educ.,* Nos. 05–CV–1214, 07–CV–4390, 2011 WL 2607935, at *3-4 (E.D.N.Y. July 1, 2011) (holding, in case where plaintiff alleged that she was assigned to a "remote dingy classroom" for discriminatory and retaliatory reasons, that "[b]eing subjected to a teaching environment, which was so cold that Plaintiff's ear would become

'numb,' . . . rises above the level of 'minor annoyances' to the level of a material adverse change in her employment conditions"). An unattractive room in which to teach is not actionable.

### 6. **Excessing**

Had plaintiff actually been excessed, forcing her to find employment at a new school, this could constitute an adverse employment action. Yet she was reinstated as soon as Walsh received word that it was not necessary to excess any of the teachers at the school. The mere potentiality that she would be excessed is insufficient to constitute an adverse employment action, as the terms and conditions of her employment were not impacted.

### 7. **"Per Session" Employment and Failure to Pay for Test Administration**

While the loss of Sotomayor's opportunities for "per session" employment, as well as the defendants' failure to pay her for test administration, could both constitute adverse actions, nothing in the record indicates that these actions are the result of discrimination.

Plaintiff has never been denied the opportunity to work a "per session" job that she has applied for, nor has she been replaced as the leader of the ESL afterschool program which she formerly led. The starting date for the ESL program during the 2011-2012 school year was delayed. When a vacancy notice for the position was posted in January 2012, Sotomayor did not apply for the position. Nothing in the record indicates that the delay was the result of discrimination, nor that Sotomayor would not have gotten the job had she applied for it.

Her allegation that she was improperly denied pay is also without merit. Plaintiff herself chose to use the period scheduled as her professional period for ESL Administration as her preparation period, and to use her scheduled preparation period as her professional period. Her grievance was denied because the period during which she was assigned to administer the tests

40

was her scheduled professional period, not a preparation period. Defendants were simply asking Sotomayor to perform the normal duties required of her position: to administer tests during her professional period for ESL Administration. No inference of discrimination arises from this request.

### 8. Claims Dismissed

Because plaintiff cannot establish a *prima facie* case of discrimination under federal law, these claims are discmissed.

### IX. State Discrimination Law

Claims under the NYSHRL are analyzed under the same standards as federal discrimination claims. *E.g. Leibowitz*, 584 F.3d at 498 n.1. As noted in Part VI(B)(1), *supra*, only those acts which occurred after July 26, 2009 are timely as to the DOE. The only alleged discriminatory acts that occurred after this date are the observations during the 2010-2011 school year; the failure to pay for preparation periods; plaintiff's initial excessing for the 2011-2012 school year; her unfavorable classroom assignment that year; and the "loss" of her "per session" position. For the reasons discussed above, *see* Part VIII, *supra,* these claims fail to make out a *prima facie* case of discrimination.

None of the claims raised against Smith and Walsh are time barred. *See* Part VI(A). They may be held individually liable under state law. Pl.'s Mem. 2; *see also, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) ("[A] defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL."). Yet for the reasons stated above, *see* Part VIII(B), plaintiff has failed to make out a *prima facie* case of discrimination under the NYSHRL against these defendants.

41

X.   **City Discrimination Law**

### A. More Liberal Standard Applies

As noted in Part VII, *supra,* following the 2005 amendments, the NYCHRL

requires that courts give the statute an independent and more liberal construction than its

federal and state counterparts.  Restoration Act § 7 ("The provisions of this [ ] title shall

be construed liberally for the accomplishment of the uniquely broad and remedial

purposes thereof, regardless of whether federal or New York State civil and human rights

laws, including those laws with provisions comparably-worded to provisions of this title,

have been so construed."); *see also Loeffler,* 582 F.3d at 278 ("[C]laims under the City

HRL must be reviewed independently from and "more liberally" than their federal and

state counterparts."); *Albunio v. City of New York,* 947 N.E.2d 135, 137 (N.Y. 2011)

(holding that the NYCHRL must be construed "broadly in favor of discrimination

plaintiffs, to the extent that such a construction is reasonably possible"); *Williams,* 872

N.Y.S.2d at 30-31 ("[C]ourts [must] be sensitive to the distinctive language, purposes,

and method of analysis required by the [NYCHRL], requiring an analysis more stringent

than that called for under either Title VII or the [NYSHRL]."). "Interpretations of New

York state or federal statutes with similar wording [only] may be used to aid in

interpretation of New York City Human Rights Law, viewing similarly worded

provisions of federal and state civil rights laws as a *floor* below which the City's Human

Rights law cannot fall." *Id.* § 1 (emphasis added).

The task of a court applying the NYCHRL is to "first identify the provision of the

City HRL [it is] interpreting and then ask, as required by the City Council: What

.

42

interpretation 'would fulfill the broad and remedial purposes of the City's Human Rights Law'?" *Williams,* 872 N.Y.S.2d at 37. The NYCHRL forbids:

> [A]n employer or an employee or agent thereof, because of the actual or perceived age, race, . . . [or] national origin . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment.

N.Y.C. Admin. Code, § 8-107.

In light of the broad purpose of the NYCHRL, unlike under state and federal law, plaintiff need not show that an employment action was materially adverse. *E.g. Williams,* 872 N.Y.S.2d at 34 (holding there is no material adversity requirement for a retaliation claim under the NYCHRL); *Margherita v. FedEx Exp.,* No. 07 CV 4826, 2011 WL 5024577, at *8 (E.D.N.Y. Oct. 20, 2011) (no material adversity requirement for a discrimination claim under the NYCHRL). "In order to make out the [adverse action] prong of a prima facie case of discrimination under the NYCHRL, a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty". *See, e.g., Williams v. Regus Mgmt. Group, LLC,* No. 10 Civ. 8987, 2011 WL 6073560, at *8 (S.D.N.Y. Dec.6, 2011) (describing development of NYCHRL case law since 2005). Similarly, "[t]he [inference of discrimination prong] of the prima facie case is satisfied if a member of a protected class was treated differently than a worker who was not a member of that protected class." *Id.*

Nevertheless, a plaintiff must still link the adverse employment action to a discriminatory motivation. *See Williams,* 872 N.Y.S.2d at 71-72. Where a plaintiff cannot do so, her claims fail. *Id.*

### B. Plaintiff Can Establish a *Prima Facie* Case Under City Law as to Observations, Evaluations, and Letters to File

Many of defendants' activities fall short of actionable discrimination even under the more liberal standard of the NYCHRL because plaintiff cannot show that she was treated differently than members of a non-protected class. As noted in Part VIII(B)(7), above, there is no evidence that plaintiff's "per session" employment opportunities were diminished, or that she was denied pay for two test administration periods, because of her race, national origin, or age. There is similarly no proof that younger Caucasian teachers were given lighter teaching loads, or that their teaching preferences were honored more frequently. Nor is there any indication that Sotomayor's classroom assignments were influenced by her race, national origin, or age. She does not claim that younger, Caucasian teachers were given preferred classroom assignments, while the older, non-Caucasian teachers at the school received less favorable assignments. Rather, she claims that she was uniquely disfavored, since no other teachers were forced to share classrooms for two consecutive years, or assigned to classrooms full of extraneous materials and broken desks. No other evidence is cited indicating that these actions were motivated by improper considerations.

Similarly, the mere possible excessing is too insubstantial to constitute a change in the terms and conditions of her employment. She was not excessed.

Plaintiff has put forward sufficient evidence to establish a *prima facie* case of discrimination for her claim of discriminatory observations, evaluations, and letters to file. While these actions do not rise to the level of a materially adverse employment action, they are more than merely "trivial, insubstantial, or petty." The circumstances of these acts give rise to an inference of discrimination. It is disputed whether non-Caucasian and/or older teachers were disproportionately subjected to similar treatment. Plaintiff claims that she was performing her job satisfactorily.

44

## C. Legitimate, Non-Discriminatory Reasons

Defendants' argument is simple: "namely [that] plaintiff deserved the review[s] [s]he got." *Hunter v. St. Francis Hosp.,* 201 F.Supp.2d 534, 544 (E.D.N.Y. 2003). They claim that Sotomayor was—in their legitimate, professional view—an objectively underperforming teacher. This led her to be evaluated more frequently and more negatively than other teachers, and caused the defendants to issue her letters to file. This legitimate reason is sufficient to shift the burden back to Sotomayor to show evidence of pretext.

## D. No Evidence of Pretext

Plaintiff cannot show that the defendants' proffered reason is a pretext for discrimination. While plaintiff disagrees with her performance ratings, a "plaintiff's subjective disagreement with [his performance] reviews is not a viable basis for a discrimination claim." *Valentine v. Standard & Poor's,* 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999). That an evaluation is tainted by discriminatory motives can be shown if she can point to similarly situated employee who was evaluated differently. For example, in a Title VII case, the Court of Appeals for the Second Circuit found that an "evaluation occurred under circumstances suggesting discriminatory motives" where:

> [Plaintiff's supervisor], who is accused of being responsible for much of the discrimination, conducted [plaintiff]'s evaluation after having supervised her for only a week. Despite the fact that she had no disciplinary write-ups, he gave her a score of two out of five. A contemporary, anonymous crewmember evaluation, instead, gave her a score of four out of five. Moreover, at the same time [plaintiff's supervisor] evaluated [another employee not within the protected class] . . . and gave him an overall rating of four out of five even though [that employee] was written up and verbally counseled on numerous occasions throughout the preceding year. And [that employee] was then promoted.

*Gorzynski,* 596 F.3d at 108. A discriminatory inference can be rebutted when multiple evaluators all express dissatisfaction with the plaintiff's performance. *Baluta v. Hicksville Union*

45

*Free Sch. Dist.*, No. 94-CV-1871, 2000 WL 335770, at \*5 (E.D.N.Y. Mar. 15, 2000) (finding that use of multiple evaluators undercuts discriminatory inference); *Ralkin v. N.Y.C. Transit Auth.*, 62 F.Supp.2d 989, 998 (E.D.N.Y. 1999) (same); *see also Missick v. City of New York*, 707 F.Supp.2d 336, 349 (E.D.N.Y. 2010).

While the plaintiff has presented facts showing that non-Caucasian and older teachers were treated as underperforming, she has not shown that white teachers who were thought to be underperforming were treated more favorably. The record reflects that Caucasian and younger teachers did receive unsatisfactory ratings. *See* Part II(J)(4).

The evidence shows that plaintiff's unsatisfactory ratings were based on defendants' (and others') legitimate perception of her teaching abilities. Beginning in 2002, plaintiff was censured—including by individuals other than the defendants—for her failure to adequately time and pace here lessons and for the arrangement of her classroom. In the same years plaintiff was negatively evaluated by the defendants, she also received negative assessments from other individuals who are not accused of discrimination—including Mann, an objective outsider. She received disciplinary letters to file from other administrators at the school. Nor were plaintiff's performance ratings consistently negative: She received satisfactory reviews from Walsh prior to 2007, and was rated "satisfactory" (presumably by Walsh and/or Smith) for her performance during the 2009-2010 and 2010-2011 school years. The observations and performance evaluations were not used as a pretext for termination, but as a sign that Sotomayor needed further professional assistance. Defendants provided this to her, partly by arranging for her to meet with Ms. Mann.

Plaintiff seeks to show pretext by pointing to other facts that allegedly show bias. Neither Walsh nor Smith made any derogatory comments to the plaintiff or any other teacher. Walsh was on the team that initially hired her; he wrote a letter recommending her for leadership training. She nevertheless seeks to impute racial animus based on statements the defendants made regarding students. Defendants argue that these statements are neutral because they do not explicitly implicate race or national origin.

Evidence of discriminatory statements directed at others in the presence of the plaintiff, under some circumstances, can be used to support an inference of bias. *Cf. Leibovitz v. N.Y.C. Transit Auth.,* 4 F. Supp. 2d 144, 152 (E.D.N.Y. 1998) ("There was sufficient evidence of widespread gender-based harassment for the jury to find a hostile work environment to which the Authority was deliberately indifferent" where "[p]laintiff testified that she was told of the harassment of other women repeatedly."), *rev'd* 252 F.3d 179, 190 (2d Cir. 2001) (noting that "evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination" but holding that plaintiff "who was not herself a target of the alleged harassment, was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing [] failed to prove that an environment existed at work that was hostile to her because of her sex"). A facially neutral remark may be derogatory in the context in which it is made. Yet "stray remarks are insufficient to show pretext." *Phillip v. City of New York*, No. 09 Civ. 442, 2012 WL 1356604, at *9 (E.D.N.Y. Apr. 19, 2012); *see also Lee v. N.Y. State Dept. of Health,* No. 99 Civ. 4859, 2001 WL 34031217, *19 (S.D.N.Y. Apr. 23, 2001) (finding that remarks by an employer cannot establish pretext when they are remote in time and are unrelated to the challenged adverse employment decision).

No reasonable jury could find that Sotomayor was subjected to more frequent classroom observations, and received negative evaluations and letters to file, because of her race, national origin, or age.  Her NYCHRL claim must be dismissed.

## XI.     Hostile Work Environment Claims Are Meritless

### A.  Federal and State Law

To establish a hostile work environment claim under Title VII, ADEA, and § 1983, a plaintiff must "show that the complained of conduct:  (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race, national origin, or age]." *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007); *see also, e.g., Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002).  In determining whether the conduct was sufficiently severe or pervasive, courts look at "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (internal citations and quotations omitted).  Claims under the NYSHRL are analyzed under the same standards as similar claims under federal law.  *See, e.g., Patane,* 508 F.3d at 115 (treating hostile work environment claims under state law using the federal standard).

As a general rule, to constitute a hostile work environment, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano,* 294 F.3d at 374 (internal citations and quotations omitted).  "Isolated acts, unless very

48

serious, do not meet the threshold of severity or pervasiveness." *Id.; see Petrosino v. Bell Atlantic,* 385 F.3d 210, 224 (2d Cir. 2004) ("isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment").

### B.  City Law

Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims. *See Williams,* 872 N.Y.S.2d at 37 ("There is no 'sexual harassment provision' of the law . . . ; there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender (Administrative Code § 8–107[1][a] )."). Under the NYCHRL, defendants' discriminatory conduct need not be "severe or pervasive" to create an actionable hostile work environment. *Id.* at 39-41. "[Q]uestions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." *Id.* at 38. The law is designed to ensure "that discrimination plays *no* role" in the workplace. *Id.* (emphasis in original). The relevant consideration is whether there is a triable issue of fact as to whether the plaintiff "has been treated less well than other employees" because of her race, national origin, or age. *Id.* at 39. "[D]efendants can still avoid liability if they prove [as an affirmative defense] that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Id.* at 41. *See also Nelson v. HSBC Bank USA*, 929 N.Y.S.2d 259, 264 (2d Dep't 2011) (adopting the standard set forth by the First Department in *Williams*).

### C.  Plaintiff Cannot Show Discrimination

As discussed in Parts X(C)-(D), plaintiff cannot show that a hostile work environment was created "because of" her race, age, or national origin. Her hostile work environment claims are dismissed.

## XII.   No *Prima Facie* Case of Retaliation Under Title VII, ADEA, NYSHRL, or NYCHRL

In order to establish a *prima facie* case of retaliation under Title VII, the ADEA, the NYSDHR, and § 1983, "an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004); *see also Gorzynski,* 596 F.3d at 110. Unlike in discrimination claims, an adverse employment action "need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v. Depository Trust and Clearing Corp.,* 604 F.3d 712, 720 n.1 (2d Cir. 2010). Rather,

> [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. We speak of *material* adversity because we believe it is important to separate significant from trivial harms.

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

The essential elements of a retaliation claim under the NYCHRL are the same, *E.g. Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009) ("To prevail on a NYCHRL retaliation claim, a plaintiff must show: "1) he engaged in a protected activity; 2) his employer was aware of that activity; 3) he suffered an action that would be reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a causal connection between the protected activity and the action."); *see also Dixon v. Int'l Fed. of Accountants,* 416 Fed. Appx. 107, 110 n.1 (2d Cir. 2011) (same). Yet the employer's conduct

50

need not be as severe to trigger liability.  Unlike under federal and state law, the employer's actions need not be "materially adverse" to the plaintiff, but merely "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7); *Fincher,* 604 F.3d at 723; *Williams,* 872 N.Y.S.2d at 34 & n.12.  A decision on whether an action was "reasonably likely to deter" the plaintiff must be made in light of the City Council's goal of "meld[ing] the broadest vision of social justice with the strongest law enforcement deterrent." *Williams,* 872 N.Y.S.2d at 32 n.7 (internal citations and quotations omitted).

Plaintiff has failed to show that she engaged in any "protected activity" as defined by federal, state, or city discrimination law.  While she alleges that she was retaliated against for taking FMLA leave, this is not a "protected activity" under Title VII, the ADEA, the NYSHRL, or the NYCHRL. *See* 42 U.S.C. § 2000e-3 (making it unlawful under Title VII to discriminate against any individual because he has opposed any practice made an unlawful employment practice "by this subchapter" or participated in an investigation, proceeding or hearing "under this subchapter"); 29 U.S.C. § 623(d) (making it unlawful under the ADEA to discriminate against any individual who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation "under this chapter"); N.Y. Exec. L. § 296(7) (making it an unlawful discriminatory practice for any person to retaliate or discriminate against any person because she has opposed any practices forbidden the New York State Human Rights Law); NYCHRL § 8–107(7) ("It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful

51

discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.").

XIII.   **FMLA Retaliation Claim Fails**

Retaliation claims under the FMLA are analyzed under the *McDonnell Douglas* framework. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). In order to make out a prima facie case, plaintiff must establish that: 1) she exercised rights protected under the FMLA; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id.*

Plaintiff has failed to establish a *prima facie* case of FMLA retaliation. The actions taken were not materially adverse to her, even under the more liberal standard applied to retaliation claims, since no reasonable factfinder would conclude that they would have dissuaded a reasonable worker from taking FMLA leave. *See Burlington N. & Santa Fe Ry. Co.,* 548 U.S. at 68. Nor do the facts give rise to an inference of discriminatory intent, as plaintiff began receiving negative evaluations and letters to file prior to her application for her first FMLA leave.

XIV.   **Conclusion**

In view of the facts of this case, no reasonable juror could conclude that Sotomayor was a victim or discrimination. The case is dismissed. No costs or disbursements are ordered.

52

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:  May 21, 2012
       Brooklyn, New York